JACKSON, *ex dem.* HERRICK AND OTHERS, *against* BABCOCK.

THIS was an action of *ejectment* for a lot of land in *Westmoreland*, in *Oneida* county.

The lessors of the plaintiff were the children and heirs at law of *John Herrick*, who died seised of the premises in question; and by his last will and testament, dated the 17th *October*, 1811, after devising to his nine children, by name, five sons and four daughters, goods, &c. to the amount of 15 dollars each, devised as follows: " I give, &c. to my wife, *Mary Bates*, after payment of my debts and funeral charges, all my estate, both real and personal, that I may be in possession of at my decease, to be at her absolute disposal, according to an agreement made and entered into with her on the 27th day of *October*, 1802, under the name of *Mary Bates Hills*, and previous to our marriage; it being my real intention, that if my said wife shall decease

Before marriage, husband and wife had entered into a written contract, by which they agreed that neither would a-lien the property then possess-ed by them; and when their mar-riage should take place, their property, of e-very descrip-tion, should form a joint fund; and that, on the de-cease of either, the survivor should possess and enjoy the whole of such joint property then remaining, or which might have been ac-quired by their mutual exer-tions.

The husband, by his last will, after giving a small pecuniary legacy to each of his children, by name, devised as follows: " I give. &c. to my wife, M. B., after payment of my debts and funeral charges, all my estate, both real and personal, that I may be in possession of at my decease, to be at her absolute disposal, according to an agree-ment made and entered into with her on the 27th of *October*, 1802, and previous to our marriage; it being my in-tention, if my said wife shall die before me, that my real and personal estate shall be equally divided among my said children, their heirs and assigns."

The wife having survived her husband, died intestate, and without issue. It was held that she took an estate *in fee*, by the devise of her husband. No technical words are necessary to devise a fee. The words, " all my estate, both real and personal, to be at her absolute disposal," are sufficient to carry a *fee*.

Since the statute of wills, as well as before, a will may be construed in connexion with another instrument of writing to which it refers.

before me, that my real and personal estate shall be equally di-
vided among my said children, above mentioned, their heirs and
assigns." The testator appointed his son, *John*, executor, and
his wife, *Mary Bates Herrick*, executrix, of his will.

The contract, or agreement, referred to in the will, between
the testator and *Mary Bates Hills*, previous to their intermar-
riage, after some introductory clauses, and mutual promises of
marriage, as soon as convenient after the execution of the con-
tract, was as follows : " The parties further promise and engage,
each to the other, that in consideration of the many kind offices
which they may, in the course of Divine Providence, be called
on to render and perform, each to the other, during the remain-
ing part of their journey through life, that neither of the con-
tracting parties shall, or will, in any way, or manner whatever,
alienate or dispose of any part of the property which they now
possess or may acquire, to the detriment of the other; but that
whenever their persons are united, according to the law of God,
and the land, their property, of whatever name or nature, shall
form a common fund, to meet the various contingencies of life ;
and that, on the decease of either, the survivor shall possess, and
enjoy the whole of such joint property, as may then remain, or
have been acquired by their mutual exertions." " And, lastly,
the parties hereunto, do freely, and voluntarily, preclude them-
selves from all, or any power, right, or authority, in any way or
manner whatsoever, to make any disposal of the property afore-
said, other than is above stated." Soon after the execution of
this contract the parties intermarried. *Herrick*, the testator,
died in 1811, and his wife, the said *Mary Bates*, survived him ;
and, afterwards, previous to the commencement of this suit, died
intestate, and without issue.

The defendant claimed to hold the premises, under the sister
of the wife of the testator.

*J. B. Yates*, for the plaintiff. The testator devised to his
wife, " all his estate, real and personal," without words de-
noting an estate of inheritance or fee. These words are to be
understood as descriptive of the things devised, not as denoting
the quantity of interest in the testator.*

Again, the testator, in declaring his intention, in case his wife
should die before him, devises all his estate, real and personal,
to his children, their *heirs and assigns.* It is evident, that he
fully understood the legal operation of those technical words;

* *Frogmorton* v.
*Wright*, 3 *Wils.*
418. per *De Grey*,
Ch. J. 6 *Cruise's*
*Dig.* 320. tit. 38.
ch. 13. s. 35, 36,
37. 2 P. *Wms.*
*Rep.* 335.  *An-
drews' Rep.* 321.

and meaning to give his children a fee; he used them as the apt and proper words to express that intention. When, therefore, in the preceding part of the same clause, in the devise to his wife, he omits the words heirs and assigns, must we not suppose, that such omission was intentional and advised, and that he did not mean to give his wife an estate in fee? To construe the words, " all my estate," as carrying an estate in fee, the intention to give such an estate must be clear and apparent.

There is no ground to suppose an estate in fee, by *implication*, from the words, " after paying of my debts and funeral expenses." To carry a fee by implication, the charge must be on the *person* of the devisee, in respect to the estate devised to him.*

The words, " to be at her absolute disposal," refer to the agreement entered into between the testator and his wife, before their intermarriage. We must, therefore, have recourse to that contract, to aid the construction of these words used in the will. There can be no doubt that a devise may be made to take effect, with reference to another instrument.† Now, if we look at the terms of this contract, it is manifest that they give only an estate for life. The object of the parties, was to make a joint fund out of their separate estates, to guard against the contingencies of life, and to be possessed and enjoyed by the survivor. They do not look beyond the life of the survivor. The terms of the will are then to be restricted to the terms of the agreement. The words, " absolute disposal," mean, therefore, nothing more than that the wife, if she survived, should have the sole and exclusive enjoyment of the estate, during her life ; unless they give the *power* also to dispose of the fee, by deed or devise.‡ If she had such a power, she *has* never executed it.

*Sill*, contra. It is much to be regretted, that courts of justice, in the construction of wills, ever abandoned technical rules, to look after the intention of the testator. Courts have said, in the construction of wills, that the intention of the testator is always to govern ; yet, afterwards, in certain cases, they say, we have no doubt of the intention ; yet, on account of certain technical words used, we cannot carry that intention into effect.

1. It is laid down in *Baddeley* v. *Leppingwell*,§ and *Throgmor-*

NEW-YORK, Oct. 1815.

JACKSON v. BABCOCK.

* *Jackson, ex dem. Townsend,* v. *Bull,* 10 Johns. Rep. 148. *Jackson* v. *Harris,* 8 Johns. Rep. 141. *Denn* v. *Mellor,* 5 Term Rep. 558. 4 East, 496.

† *Powell on Devises,* 22, 49, 52.

‡ 1 P. Wms. 149. 1 Mod. 189. *Powell on Powers,* 31, 32.

§ 3 Burr. 1541,

*ton* v. *Holyday,** to be the established principle, that the inten-tion of the testator is to govern, and that it is immaterial what words are made use of, if, by sound construction, the intention to pass a fee is apparent; and that no technical words are neces-sary for that purpose. The testator gives all his estate to his wife, " after payment of his debts and funeral charges." The estate is thereby made subject to the payment of debts; and any words, which, according to the *English* decisions, will charge the estate devised, with payment of debts or legacies, will carry a fee to the devisee, by implication.†

The case of *Jackson* v. *Harris*‡ I consider as overruled by that of *Jackson* v. *Bull.*§

[SPENCER, J. It was not the intention of the court, to over-rule that case. On the contrary, we declared, in *Jackson* v. *Bull*, that it was a correct decision.]

It appears to me, that the decision in *Jackson* v. *Bull* is not founded in principle. A fee is claimed, by implication, on the ground that the testator meant to benefit the devisee, by the de-vise of the estate to him. Now, the devisee, whether the charge is *personal*, or, on the estate devised, stands on no better or dif-ferent ground ; it cannot be that he is bound to pay the debts and legacies, at all events, or beyond the estate devised ; for the devisee is not chargeable beyond the estate devised to him.‖

2. The testator gives all his estate to his wife, " to be at her absolute disposal, according to an agreement," &c. The word, " estate," unless restrained by other words, will carry a fee.** But it is said, that by referring to the marriage articles, that instrument must govern, in ascertaining the intention of the testator. The testator first uses words in his will, which carry a fee, and then refers to the agreement made before marriage, without expressing what his intention was, in those articles. That agreement cannot restrain, or abridge, the meaning of the words first used in the will, especially when the testator was an unlearned person. The words, " to be at her absolute dispo-sal," further show the intention to give a fee. In *Jackson*, ex dem. *Bush*, v. *Coleman*,†† the testator gave to his wife, " the use of all his real and personal estate, to use and dispose of at her pleasure," it was held, that the wife took an estate in fee.

† Doe v. Rich-
ards, 3 Term
Rep. 356. Doe v.
Holmes, 8 Term
Rep. 1. Goodti-
tle v. Maddern,
4 East, 496. Ack-
land v. Ackland,
2 Vern. 687.
Freak v. Lee, 3
Show. 88: Wel-
lock v.Hammond,
Cro. Eliz. 204.
‡ 8 Johns. Rep.
141.
§ 10 Johns. Rep.
148.

‖ 1 N. R. L 316.
sess. 36. c. 93 s.
4, 5.

** Holdfast v.
Martin, 1 Term
Rep.411. Fletch-
er v. Smiton, 2
Term Rep. 656.
Meny v. Wise, 2
Vern. 564. 690.
3 P. Wms. 295.
Jackson v. De-
lancey, 11 Johns.
Rep. 365.

†† 2 Johns. Rep.
391.

Again, the testator does not devise over his estate, in case his wife should survive him, but only in case she should die before him. His giving small legacies to each of his children, shows, also, an intention to disinherit them. As to the marriage articles, there can be little doubt that the intention of the parties was to create a joint estate, the whole of which should go to the survivor.

Platt, J., delivered the opinion of the court. The only question is, whether *Mary*, the widow of *John Herrick*, sen., took an estate *for life*, or an estate *in fee*, under the will of her husband.

It is an established rule, that no *technical words* are necessary to devise a fee, and that the *intention* of the testator, to be collected from the whole will, is to govern; but the phraseology and combinations of words used in wills, are infinitely various, and, therefore, the application of any general rule is often very difficult.

The words used by the testator in this case are these: " I give, bequeath, and devise unto my wife *Mary*, after payment of my debts and funeral charges, all my estate, both real and personal, that I may be in possession of at my decease, to be at her absolute disposal, according to an agreement made with her on the 27th day of *October*, 1802."

I see no ground to contend that this devise falls within that class of cases which give a fee *by implication*, where the payment of debts is charged upon the *devisee personally*, or *specifically upon the land devised*.

The intention, here, is clear, that the *residue* of the estate should go to the wife, after the debts and funeral charges were paid from the funds which the law provides; not that the whole estate should vest in the wife, subject to the payment of debts, as a condition of the devise. This doctrine is well examined, and most of the leading cases on this point are ably reviewed, in the case of *Jackson*, ex dem. *Townsend*, v. *Bull*. (10 *Johns. Rep.* 148.)

The words " *all my estate, both real and personal*," " *to be at her absolute disposal*," are, undoubtedly, sufficient to vest a fee; unless those words are controlled and limited by the terms of the written agreement to which the will expressly refers.

(*Jackson,* ex dem. *Bush,* v. *Coleman,* 2 *Johns. Rep.* 391. and the cases there cited.)

There is no question that, *since* the statute of wills, as well as *before,* a will may be construed in connexion with another instrument of writing, to which it refers. (*Powell on Devises,* 22. 49. 52.) Hence it becomes necessary to examine the marriage articles, in order to determine the question before us. It is inferrible, from that agreement, that the husband acquired property in right of his wife; and that they both contributed to the joint fund. What was the original proportion of each, does not appear. It may be, that the fund was composed *chiefly* of the property of the wife.

The husband may, therefore, have obeyed a good conscience, in disinheriting his children in favour of his widow; and I see nothing in the *agreement* to control the words in the *will.* When the agreement was made, the parties could not foresee whether the joint fund would consist of *real* or *personal* estate, when the event of survivorship should occur; they, therefore, say, " the survivor shall *possess* and *enjoy* the *whole* of such joint property."

When the will was made, the testator spoke with reference to the actual condition of the fund at that time ; and he thereby devises to his wife " *all his estate, both real and personal,*" " *to be at her absolute disposal, according to the agreement,*" &c. By the will, the testator shows that he understood and intended that the agreement was to give the full and complete benefit of survivorship in all his real and personal estate. The agreement and the will appear to me to be perfectly consistent; and the words " all my real estate, at her absolute disposal," are sufficient to carry a fee.

It is said by the counsel for the plaintiff, that, in using the words " *heirs and assigns,*" in the devise to his children, the testator shows that he understood the meaning and effect of those words ; and that, in using other words in the devise to his wife, he manifests an intention not to give a fee.

I think this weighs but little in judging of the testator's intention ; for, although the word *heirs* is the most apt, it is not the *only* word to devise a fee.

The contingent devise to the children seems to me to afford a strong inference in favour of the widow's claim to the fee.

The testator says, " It is my intention, that *if my said wife*

NEW-YORK,
Oct. 1815.

*shall decease before me,* that my real and personal estate shall be equally divided among my children, and their heirs and assigns." Now, if he intended that his wife should have only a life estate in the event of her surviving him, why did he not limit the remainder to his children? It is true, his children would take, as heirs, the same estate which such a limitation would give them; but it is equally true, that the contingent devise to them, on the event that his wife should die before him, was also inoperative and superfluous. If the widow has not *a fee,* then the remainder, after her life-estate, is *undisposed of* by the will; and *quoad hoc,* the testator has died *intestate.* Such a construction would defeat the intention of the testator.

In my opinion, therefore, the case shows a title out of the lessors of the plaintiff; and the defendant is entitled to judgment.

Judgment for the defendant.