## MILLER *v.* LYNN.

Testator devised " as to such worldly estate wherewith it has pleased God to bless me, I give and devise to my son J., the lot whereon I now live, to hold the same to him during his natural life, and after his decease to his children lawfully begotten, share and share alike." J. takes an estate for life, and his children remainders in fee-simple.

In error from the Common Pleas of Northampton.

*March* 23. Debt on bond and case stated. The action was for the purchase-money of land sold by Jonathan Lynn, and the defence taken was that he had but an estate for life.

In 1807, F. Lynn made his will, as follows: " and as to such worldly estate wherewith it has pleased God to bless me in this life, I give and dispose of the same as follows :" after making provision for his wife, and giving certain annuities and legacies; " as to my plantation in, &c., I give and devise to my eldest son, George Felix, the lot, &c., containing one hundred and fifteen acres, as by a draft in his possession will appear; to hold the same to him during his life, and after his decease, to his children lawfully begotten, share and share alike." He then made a devise to his son Peter, " to hold the same to him, his heirs and assigns for ever; *further, I give unto my son Jonathan,* the middle lot whereon I now live, containing one hundred and nine acres, as by a draft now in his possession will appear, *to hold the same to him during his natural life, and after his decease, to his children lawfully begotten, share and share alike.*" As to the residue of his estate he gave two-thirds to Peter and Jonathan, and *unto their heirs,* and the remaining third among his other son and his grandchildren.

By a codicil, in the same year, he recited that he had devised his

real estate to his sons George and Jonathan, for their lives, and to his son Peter, and to his heirs and assigns, with a proviso which he thereby revoked.

In 1809, Jonathan executed a deed barring the supposed entail of his estate, and, in 1833, conveyed to Miller in fee-simple, who had paid the larger portion of the purchase-money, and the question was on his title to convey.

The court below gave judgment for the plaintiff.

*Jones* and *Ihrie*, for plaintiff in error.—A plain intent is manifested that there should be an estate for life in Jonathan, and a remainder in fee to his children. Why should this be overruled? To make children a word of limitation is but an exception to the general rule, to carry out a clear general intent. There is no such construction required here. The intent to give the fee to the children is satisfied by the use of the word estate in the introductory clause, and the words share and share alike; Clayton v. Clayton, 3 Binn. 489. The other intent—to provide for all his son's children—is satisfied by the rule that after-born children of the devisee for life will take by way of remainder; 6 Co. 17; Ginger v. White, Will. 348. There is then no possible reason for overturning both the declared intent and the rule of law, that children is a word of purchase; Dickinson v. Lee, 4 Watts, 83; Minnig v. Batdorff, 5 Barr, 503; Cru. Dig. *Deed*, c. 25, s. 30, *Dev.* c. 14, s. 33, 35.

*King*, contrà.—The estate is in tail or in fee to the father or the children. We contend it to be in the father. The object was equal division of the plantation into three parts, and to settle it in the three lines of descent. The mode of carrying this out is by an estate-tail. Where this is the design, children is considered a word of limitation, including all lineal descendants; 2 Pow. Dev. 495, n.; Robinson v. Robinson, 1 Burr. 38; 3 Bro. Par. Ca. 180; Smith on Ex. Int. 224; James's Claim, 1 Dall. 47.

*April* 3.    COULTER, J.—"Further, I give and devise unto my son Jonathan, the middle lot whereon I now live, containing one hundred and nine acres, as by a draft now in his possession will appear, to hold the same to him during his natural life, and after his decease, to his children lawfully begotten, share and share alike." These are the words of the devise, in the will of Felix Lynn, upon the resolution of which the questions submitted in the stated case mainly depend. By a rigid technical application of the

rule in Shelly's case, the first taker would have an estate in fee-simple or fee-tail, depending upon the construction to be given to the limitation to the children, if indeed it can be construed into a limitation.    But the reason for the rule never existed in this state, and has long since passed away, even in England.    There it yields to the intent of the testator, when that can be clearly ascertained. The case of Robinson *v.* Robinson, 1 Burr. 38—which is referred to because it concentrated the opinion of all the judges and the chancellor, and was finally affirmed on appeal to the House of Lords, and may therefore be considered as a guide-post in the long waste of decisions on the subject—affords an emphatic instance of the manifest general intent of the. testator, overcoming the technical, and even the popular meaning of words used in a will, and apparently showing a particular or secondary intent.    So in Perrin *v.* Blake, 4 Burr. 2581, the King's Bench ruled, that the manifest intent of the testator may control the legal or technical operation of the word heirs as a limitation, and turn the words into a description of the person who is intended to take, and constitute him a purchaser. And this is the good sense of the doctrine on the subject; for it would be in vain to permit an individual, a *grossum caput,* who possessed only a glimmering of intellect, sufficient to know his family, and friends, and property, to make a will, if it was to be construed by technical rules of art, concerning which he was totally ignorant.    In Pennsylvania, the manifest intent of the testator has always been the rule of construction, and where the intent is plain, if that intent is not against the policy of the law, it overbears and overcomes technical words and technical rules.    But where words of art are used by a testator, it is fair to presume that he understood them in a technical sense, unless other parts of the will show that he used them in a popular sense, consistent with his general intent.

If then we can eliminate the general and primary intent of the testator from the words of the devise, in connection with the whole of the will, we shall get possession of the key that unfolds its legal construction.    First, then, the testator gives the lot to his son Jonathan, to hold the same during his natural life ; we infer, therefore, as a matter of course, that the testator meant what his words naturally import, that the son should have an estate in the land as long as he lived. · It is in vain to look through the will to find any other expression or implication to increase that estate, save only the limitation, if it can be construed into a limitation, to his children lawfully begotten, share and share alike.    The rule in Shel-

2 P ·

ly's case, *id est*, " where the ancestor, by any gift or conveyance, takes an estate of freehold, and in the same gift or conveyance an estate is limited, mediately or immediately, to his heirs in fee or in tail, the word *heirs* is a word of limitation of the estate, and not of purchase;" 1 Co. 94; or as Preston gives it, " if in any instrument, a freehold be limited to the ancestor for life, and the inheritance to his heirs either mediately or immediately, the first taker takes the whole estate; if it be limited to the heirs of his body, a fee-tail; if to his heirs, a fee-simple" would undoubtedly vest a fee in the first taker, Jonathan. It is unnecessary to determine whether, under the rule, the gift to the children would make an estate-tail, in a will, or an estate in fee-simple, because we think the rule is amoved by the testator's general intent, and does not apply.

We are interdicted from an application of the rule to this case, by the manifest intent of the testator. Thus in the words of the devise, the testator throws it into the form used in a deed, the premises and *habendum*. He first gives the lot to his son Jonathan, which constitutes the premises, and passed an estate for life. By the *habendum*, he might have enlarged or abridged the estate, but he does neither; the *habendum* is to hold the same to him during his natural life, and after his decease, to his children, &c., passing the same estate for life given in the premises; thus clearly showing that the testator knew the office and power of the *habendum*. Other clauses of the will clearly corroborate this view of the testator's intention. In the clause immediately preceding the one under consideration, he gives a part of his estate to his son Peter, to have and to hold, to him, his heirs and assigns, evincing that he knew what words created a fee, although he was probably profoundly ignorant of the rule in Shelly's case.

The testator's intent is further illustrated, and, as I think, placed beyond doubt, by a codicil. The will was made in 1807, and at the same date, and in the presence of the same witness, he makes the codicil, in which he says, " I have granted my real estate to my three sons; to George and Jonathan, one lot each, during their lives, and the other lot to my son Peter, his heirs and assigns. A codicil is part of the will, and to be construed as such. Taking the whole will together, we are of opinion that there was a clear and manifest intention of the testator to give his son Jonathan an estate for life only; and ever since the case of Perrin *v.* Blake, followed by numerous cases, it is established that this intent must prevail, against the rule in Shelly's case.

Jonathan, the first taker, having then an estate for life, the

remainder was vested in his children living at the time of testator's death, which opened to let in after-born children; Doe *v.* Perryn, 3 Term Rep. 484; Fearne, 313, 314.

It remains to be resolved, what estate the children of Jonathan took under the devise to them. That they took an estate in fee-simple as purchasers, and not derivatively from their father, seems sufficiently clear. In the preamble to the will is, "as to such worldly estate as it hath pleased God to give me, I dispose of it in manner and form following;" making it apparent, from these words, that he intended to dispose of his whole estate. Although, therefore, there are no words of limitation or perpetuity added to the devise to the children, yet as there is no other disposition of the estate, no limitation over, we bring down the word estate in the preamble, and connect it with the devise, in order to effectuate the intent of the testator. Some judges lay little stress upon the words in the preamble, but none deny the propriety of taking them into consideration, for the purpose of ascertaining the intent of the testator.

In a will, no technical words are necessary to convey a fee, and the intention of the testator, to be collected from the whole of the will, must govern; 12 Johns. 389. The word estate, in the preamble, may be so incorporated into a devise as to pass a fee; 3 Call. 306. A will had the following preamble, "and as for such worldly estate as it hath pleased God to give me, I devise in the manner and form following," and then devised as follows: "I give and bequeath to my daughter, a tract of land called," &c.; the court adjudged that the daughter took a fee-simple; 1 Har. & McHenry, 452. This court determine that Jonathan Lynn took an estate during his natural life, and no more; and that his children, in the language of the stated case, can recover by law, after his death, the premises sold by Jonathan S. Miller, the defendant below.

> The judgment, therefore, in favour of the plaintiff, for $1000, is erroneous, and is reversed; and judgment rendered on the stated case for defendant below.